584 So.2d 337 (1991)
Lou Ella CARLIN, Plaintiff-Appellant,
v.
RAPIDES PARISH POLICE JURY, et al., Defendants-Appellees.
No. 90-254.
Court of Appeal of Louisiana, Third Circuit.
July 15, 1991.
*338 McGee & Caswell, A. Gerard Caswell, Eunice, for plaintiff/appellant.
Joseph Beck, II, Asst. Dist. Atty., Colfax, for defendant/appelleePolice Jury (Grant).
B. Dexter Ryland, Asst. Dist. Atty., Alexandria, for Police JuryRapides.
Powers, Vaughn & Clegg, Wm. E. Williard, Baton Rouge, for Anglo American.
Gold, Weems, Bruser, Sues & Rundell, J. Ogden Middleton II, Alexandria, for Town of BallLa Risk, Management.
Gist, Methvin, Hughes & Munsterman, Howard Gist III, Alexandria, for LIGA.
Before LABORDE, YELVERTON and KNOLL, JJ.
LABORDE, Judge.
Plaintiff, Lou Ella Carlin, appeals from the trial court's grant of summary judgment in favor of defendant, Rapides Parish Police Jury (Police Jury), dismissing it from the lawsuit. We find that summary judgment was not properly granted in this case. We reverse.
Plaintiff alleges that on November 16, 1987, she and her husband were travelling on Louisiana Highway 165 in Rapides Parish, heading towards Grant Parish, in a 1977 Chevrolet pickup truck. Mr. Carlin was driving and plaintiff was riding as a passenger. Mr. Carlin turned off La. 165 onto Kitchen Creek Road and then onto Robertson Road. Mr. Carlin proceeded over the Kitchen Creek Bridge, and when he reached the end of the bridge, the pickup truck fell in a hole which had formed where the bridge meets the roadway. Plaintiff allegedly sustained injuries as a result of the accident.
The evidence establishes that Rapides Parish experienced extremely heavy thunderstorms on the afternoon of November 15, through the afternoon of November 16, 1987. Rainfall amounts totalled nearly 15 inches during that 22 hour period. In his affidavit, Tom Konvicka, Chief Meteorologist at KALB-TV5, stated that in his opinion the rainfall occurring during that period qualified as a "100 year rainfall episode," meaning that the event was so uncommon that it can only be expected to occur once in 100 years. Witnesses stated that this massive rainfall caused many problems in Rapides Parish, including power outages, as well as flooded bridges and roads. The evidence indicates that the Kitchen Creek floodwaters washed around the edge of the bridge, removing dirt from underneath the asphalt where the asphalt abuts the end of the bridge. This apparently caused the pothole to form at the point where the bridge meets the roadway.
Plaintiff filed suit against several defendants, including the Police Jury. The Police Jury filed a motion for summary judgment contending that it does not own the bridge in question and is not responsible for maintaining it. The Police Jury argues that the bridge was acquired by the Town of Ball, when it annexed several tracts of land from the Parish. The trial court *339 agreed and granted summary judgment in favor of the Police Jury.
There is no dispute as to the fact that the bridge is not under the custody and control of the Police Jury. Plaintiff argues, however, that a Police Jury maintenance crew had worked on the bridge approximately six months before this accident took place. Plaintiff contends that even though the Police Jury had no legal duty to perform the repair work, once it undertook the project, it had the responsibility of carrying out the work in a reasonably prudent fashion. Accordingly, plaintiff alleges that there exists a genuine issue of material fact as to whether or not the Police Jury performed proper repair work and that the trial court erroneously granted summary judgment in favor of the Police Jury.
This court addressed a similar contention in Andrus v. Police Jury of Parish of Lafayette, 303 So.2d 824 (La.App. 3d Cir. 1975). In that case, the plaintiff sued the Lafayette Parish Police Jury and its insurer, Highlands Insurance Company, for damages he sustained when the car he was riding in failed to negotiate a curve and ended up in the Vermilion River. The defendant settled with the plaintiff and brought a third-party action against the State Department of Highways. Lafayette Parish and its insurer contended that despite the fact that the road was owned by the Parish and not the State, the State made some improvements on the road and when it did so it undertook management of Lafayette Parish's affairs and was under the duty to do the job properly. In affirming the judgment of the trial court dismissing the third-party claim against the State, this court stated the following.
"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking; if a) his failure to exercise reasonable care increases the risk of such harm, or b) he has undertaken to perform a duty owed by the other to the third person, or c) the harm is suffered because of reliance of the other or the third person upon the undertaking. Restatement of the Law, 2nd, Torts, [sec.] 324A."
Andrus, at 827. This court went on to find that under the above articulated standard, the State was not negligent in performing the improvements.
In the case sub judice, William Quarles, the Street Superintendent for the Town of Ball, testified that the Police Jury did repair work to correct damage caused by a prior washout occurring on May 31, 1987. He stated that on that day a Police Jury maintenance crew constructed head walls for the Kitchen Creek Bridge. A Rapides Parish Highway Department work order printout also confirms that the work was done. Mr. Quarles stated that the floodwaters on November 15 & 16, 1987, ate through the head wall the Police Jury built in June of that year, and this is what caused the road to collapse. However, Mr. Quarles also opined that there is nothing the Police Jury could have done which would have prevented the washout occurring in November of 1987, considering the volume and the speed of the water flowing down Kitchen Creek at that time.
The deposition testimony of Jerry Burnaman, John Hardin and Robert Gunter is also contained in the record on appeal. All three of these gentlemen work for the State Department of Transportation and Development. Mr. Gunter, who is a District Maintenance Engineer with the Department, testified that the erosion of the head wall could have been prevented by either adding a span to the bridge or by extending the head walls and creating wing walls which would enclose the embankment. As for the first option, Mr. Gunter said that to add a span would be a major undertaking. Mr. Gunter stated that it would have been his recommendation that the Police Jury install wingwalls on the bridge when it built the head walls. Mr. Burnaman and Mr. Hardin inspected the Kitchen Creek Bridge on November 12, 1987, four days before the accident. Both Mr. Burnaman and Mr. Hardin testified that they agree with Mr. Gunter's recommendation that wing walls be installed, but neither one could remember whether the *340 Kitchen Creek Bridge had wing walls. Mr. Hardin stated that from his review of a survey of the bridge provided at his deposition, it appeared as though one side of the bridge had a wing wall, but he couldn't recall if that was actually the case. Finally, Mr. Burnaman noted that most of the bridges in Louisiana have wingwalls to prevent washouts.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Dixie Campers, Inc. v. Vesely Co., 398 So.2d 1087 (La. 1981). Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is summary judgment warranted. The burden of showing that there is not a genuine issue of material fact in dispute is upon the mover for summary judgment. Any doubt is resolved against the granting of summary judgment and in favor of trial on the merits. Morgan v. Matlack, Inc., 342 So.2d 167 (La. 1977). From the deposition testimony present in the record, we find that there is a genuine issue as to whether the Police Jury exercised reasonable care when it built the head walls on Kitchen Creek Bridge in the Summer of 1987.
After reviewing the pleadings, deposition and affidavits filed by both parties and resolving all doubts against the mover, we determine that there is a genuine issue of material fact in this case and that the Police Jury is not entitled to judgment as a matter of law. The judgment of the trial court is reversed and the case is remanded for further proceedings. The Rapides Parish Police Jury is cast for all costs incurred in connection with the motion for summary judgment. Assessment of other costs is to await final determination of this litigation.
REVERSED AND REMANDED.